## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ROSE MARIE WIRSHING,**

  **Plaintiff,**

       **v.**

**BANCO SANTANDER DE PUERTO RICO,**
**et al.,**

  **Defendants.**

Civil No. 11-2073 (GAG)

## OPINION AND ORDER

Rose Marie Wirshing ("Plaintiff" or "Wirshing") brought claims against Banco Santander de Puerto Rico ("Santander") and several John Does (collectively "Defendants") for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, Puerto Rico's anti-retaliation statute, Law No. 115, P.R. LAWS ANN., tit. 29 §§ 194a *et seq.,* and Puerto Rico's tort law statutes, Arts. 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN., tit. 31 §§ 5141-142.  (See generally Docket No. 1.) Santander moved to summarily dismiss and included a memorandum of law.  (Docket Nos. 25 & 26.) Plaintiff opposed, Santander replied, Plaintiff submitted a sur-reply, and Santander responded to the sur-reply.  (Docket Nos. 35, 47, 54, & 56.)  For the following reasons, the court **DENIES** Santander's motion for summary judgment at Docket No. 25.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

**Civil No. 11-2073 (GAG)**

law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006)

Civil No. 11-2073 (GAG)

(quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Santander provides banking and financial services in Puerto Rico.  Wirshing was employed with Santander from July 2007 until April 2012 as a deposit product manager.  She received bonuses from 2008 to 2011.  (Docket No. 26-3 at 53-54.)  From July 2007 to July 2009, she reported to Alberto Aveleyra ("Aveleyra").  From July 2009 through 2010, she reported to Guillermo Lopetegui ("Lopetegui").  From January 2011 until March 2011, she reported to Borja Serrats ("Serrats").[1]  Her last day of work was March 4, 2011.  Thereafter, she took a leave of absence through the State Insurance Fund Corporation of Puerto Rico ("SIFC") and Santander's short-term and long-term disability plans, claiming she suffered emotional distress from retaliatory discrimination for filing a sexual harassment complaint.  (Docket Nos. 26-1 ¶¶ 1-4; 35-1 ¶¶ 1-4.)

Santander has policies against discrimination, sexual harassment, and retaliation.  All employees must read and comply with the policies, which are posted on Santander's intranet, though Wirshing states that the policies were not posted on the intranet until 2011.  (Docket Nos. 26-1 ¶ 5; 35-1 ¶ 5.)  New employees must read and review the policies in Santander's human resources office.  (Docket Nos. 26-1 ¶ 5.)  Wirshing received a copy of the policies, which included a procedure to report alleged discrimination, harassment, and retaliation to Santander's human resources department for investigation.  (<u>Id.</u> ¶ 6.)  The manual does not define "retaliation" or explain corresponding sanctions and remedies, and

---

[1] During her deposition, Wirshing also stated that Anibal Gonzalez directly supervised her in January 2011.  (Docket No. 26-3 at 17.)

Civil No. 11-2073 (GAG)

Wirshing challenges the effectiveness and implementation of the policies because Santander failed to provide orientation or follow-up monitoring of its employees.  (Docket No. 38-1 ¶ 5.)

The underlying actions for the claim, according to Wirshing, "comprise the time period of December 2010 through March 2011, ending with her separation from employment in April 2012 after a long leave of absence . . . ."[2]  (Docket No. 35 at 1.)  Wirshing, however, initially brought several complaints to the human resources' office attention in 2009, including sexual harassment allegations against Aveleyra in March 2009.  (Docket No. 35-1 ¶ 6.)  According to Wirshing, Santander found that Aveleyra "had actively engaged in jokes of [a] sexual nature, violated the 'performance feedback' policy and violated the policy on the confidentiality of sexual harassment complaints by disclosing" Wirshing's complaint against him.  (Id.)  In February and May 2010, respectively, she filed a complaint with Puerto Rico's Anti-Discrimination Unit ("ADU") and the EEOC, and both bodies found no probable cause for discrimination and retaliation.  (See Docket No. 26-2 at 50-51.)  Wirshing neglected to challenge the allegedly discriminatory conduct within ninety days of notice of the EEOC's denial.

On January 7, 2011, Anibal Gonzalez, the retail production manager, "commented to Wirshing that he saw animosity in emails between Aveleyra and her, and that he was fully aware of the situation between Aveleyra and Wirshing." (Docket No. 35-1 ¶ 17.) Gonzalez purportedly told Wirshing that "she had everything to lose because Aveleyra was" the commercial network director and "Wirshing was just

---

[2] Santander's statement of facts details a series of allegations Wirshing levied against several of its employees that occurred in 2009 and 2010, including a denied EEOC complaint that Wirshing filed in 2009.  In the complaint, she alleged Aveleyra sexually harassed and retaliated against her. Wirshing responds that these allegations are circumstantial evidence of time-barred claims of discrimination, rather than the actionable causes substantiating this suit.  The court will address any instances of alleged discrimination preceding December 2010 when addressing the merits to the extent they require discussion.

Civil No. 11-2073 (GAG)

a simple manager, and 'the rope always splits at the thinnest point.'" (Id.) Wirshing also claims Gonzalez would "isolate [her] from meetings [and] presentations due to the situation with [Aveleyra]." (Docket No. 35-2 at 24.)

Around the same time, Serrats became Wirshing's immediate superior. (Docket Nos. 26-1 ¶ 14; 35-1 ¶ 14.) Serrats asked Wirshing for a report she could not generate because it fell outside the scope of her capabilities, prompting her to ask other employees outside of her department for data to generate it. (Id.) Serrats informed Wirshing that she should be able to prepare the report without outside assistance. (Id.) Wirshing counters that she "had not been trained" on the program surrounding the report and, consequently, needed to seek outside assistance to follow procedure.[3] (Docket No. 35-1 ¶ 14.)

Wirshing took a medical leave of absence from January 21, 2011 until March 1, 2011. (Docket Nos. 26-1 ¶ 14; 35-1 ¶ 14.) On March 3, 2011, Wirshing and Serrats met, Wirshing requested a new position with more responsibilities, and Serrats, who shares a personal friendship with Aveleyra, "defended Aveleyra on his actions and said that Wirshing should leave that alone and keep working." (Docket No. 35-1 ¶¶ 19, 21, 33.) The next day, Serrats told Wirshing he would like her to concentrate only on one client: Banca Preferente. (Docket No. 26-1 ¶ 16.) Banca Preferente was an important Santander client whose project Wirshing launched from 2008 to 2009. (Docket No. 26-1 ¶ 17.) In March

---

[3]   Wirshing associates this disagreement with an instance of retaliation. Although Serrats and Aveleyra were friends, as discussed below, this particular interaction is completely devoid of material adversity. It is neither pervasive nor severe, offensive, or damaging to Wirshing's employment. Furthermore, she lost no benefit, was not demoted or suspended, forfeited neither title nor responsibility, and incurred no hardship aside from her employer's opinion, perhaps an incorrect one, that she should be able to complete a particular task. To the extent that Plaintiff seeks to include this in her allegations against Santander, the court finds this exchange so benign and unaccompanied by consequent damages that it merits neither discussion nor analysis beyond this point. (See Docket No. 26-3 at 38-40) (detailing exchange).

Civil No. 11-2073 (GAG)

2011, however, the project lagged.  (Id.)  Serrats was concerned about the program's prosperity and sought to reinvigorate it to its past performance levels.  (Id.)  Serrats decided that Wirshing, as the employee with the most seniority and knowledge about the program, should concentrate solely on Banca Preferente.  (Id. ¶ 18.)  Serrats reassigned Wirshing's subordinate to assist her with her "other functions" so she could dedicate her energy to Banca Preferente.  (Id.)

Wirshing claims this reassignment exemplifies Santander's gradual stripping of responsibilities "over the Banca Preferente program on an ongoing basis throughout the course of the years 2009 and 2010, leading into [2011]."  (Docket No. 35-1 ¶ 16.)  Serrats denies that he reassigned Wirshing to retaliate against her for previously filing the EEOC claim.  (Docket No. 26-1 ¶ 19.)  Wirshing disagreed with the decision and did not return to work; rather, she took a leave of absence with the SIFC and Santander's short-term and long-term disability plans beginning on March 4, 2011.  (Id. ¶ 20.)

Wirshing's father, Herman Wirshing ("Herman"), subsequently discussed these matters with Santander board member Roberto Valentin ("Valentin").  (Docket No. 35-1 ¶ 25.)  Valentin allegedly told Herman that "if she continued with the case, it would be very difficult for her to find work in the banking community, because [Santander] had enough connections and resources . . . ."  (Id.)

On March 14, 2011, Wirshing met with Aissa Rosado ("Rosado") from Santander's benefits group to complete paperwork for Wirshing to report to the SIFC.  Wirshing claims she asked Rosado to include a summary of the retaliatory circumstances she allegedly endured and that "Rosado refused on the basis that she could not certify what was written."  (Docket No. 35-1 ¶ 21.)  She further asserts that Rosado threatened, "If you continue with those allegations, you could be fired from [Santander]."  (Id.)  Rosado prepared the form and Wirshing obtained treatment through the SIFC.  (Docket No. 26-1 ¶ 21.)

Civil No. 11-2073 (GAG)

Santander also provides its employees with short-term and long-term disability benefits through private companies. (Docket No. 26-1 ¶ 23.) Applying for these benefits requires personal information provided by the applicant and the applicant's physician and a review by Santander's human resources and payroll departments. (Id. ¶¶ 24-25.) After the review, the application is sent to the appropriate insurance company. (Id.) Wirshing applied for these benefits. According to Santander, it took nineteen days to review and send Wirshing's short-term disability application to the insurer, and thirty-five days to send the long-term disability application.[4] (Id. ¶ 26.)

On May 23, 2011, Wirshing filed a second charge of retaliation against Santander with the ADU and the EEOC. (Id. ¶ 30.) Wirshing received a right-to-sue letter from the EEOC on November 1, 2011. (Id. ¶ 31.) She was officially terminated in April 2012.

III. DISCUSSION[5]

The three-step McDonnell-Douglas burden-shifting framework applies to Title VII retaliation claims: the plaintiff must establish a *prima facie* retaliation case, the defendant must reply with a

---

[4] Wirshing sent the long-term disability application directly to the insurer, rather than back to Santander. (Docket No. 35-2 at 17-18.) Furthermore, Santander includes a detailed account of employee applications for disability benefits, specifically chronicling the time that elapsed between when the bank received the application and when it sent it to the appropriate insurer. The information substantiates that Santander's efforts on Wirshing's behalf reflect the day-to-day bureaucratic timeline. Wirshing objects to admitting these figures into evidence based on Federal Rule of Evidence 902(11). The Rule states, "Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record . . . so that the party has a fair opportunity to challenge them." FED. R. EVID. 902(11). The information was presented in a motion for summary judgment, i.e., before a trial or hearing. Thus, the Rule is not violated. Although the motion for summary judgment is denied on other grounds, the court will afford Wirshing, upon motion, limited discovery concerning these figures.

[5] Santander's summary judgment motion only concerns the Title VII claim; thus, the court does not consider whether to dismiss the Puerto Rico law claims.

Civil No. 11-2073 (GAG)

legitimate, non-discriminatory reason for the adverse employment action, and, if the defendant satisfies this burden, then the burden evaporates and the plaintiff must demonstrate a genuine issue of fact evincing that the nondiscriminatory rationale was pretext for the adverse employment action.  See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a *prima facie* retaliation claim, a plaintiff must prove three elements.  First, Wirshing must show that she undertook protected conduct.  Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013).  Second, the "employer" had to take "a material adverse action against her — i.e., action that could deter a reasonable employee from complaining about the discrimination.  Requiring that level of adversity helps to separate significant from trivial harms, with petty slights, minor annoyances, and simple lack of good manners falling in the trivial category."  Id. (internal citations omitted) (internal quotation marks omitted).  Third, "a causal nexus" must exist between elements one and two."  Id. "Obviously too, the employee must show that the retaliator knew about her protected activity — after all, one cannot have been motivated to retaliate by something he was unaware of."  Id. (internal citations omitted) (internal quotation marks omitted).  Awareness may be demonstrated by circumstantial evidence. Id. (citing Lewis v. Gillette, Co., 22 F.3d 22, 24-25 (1st Cir. 1994) (per curiam)).

In retaliation claims, "environmental harm such as harassment by co-workers or supervisors is actionable under Title VII if it is so severe or pervasive that it alters the conditions of the plaintiff's employment."  Marrero v. Goya of P.R., Inc., 304 F.3d 7, 26 (1st Cir. 2002).  Employers are liable for retaliation if they "tolerate[] severe or pervasive harassment motivated by the plaintiff's protected conduct."  Id.  "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to' material adversity."  Blackie

Civil No. 11-2073 (GAG)

v. Maine, 75 F.3d 716, 725 (1st Cir. 1996).  It is incumbent on the plaintiff to show "that the retaliatory harassment was so severe that it rendered her work environment objectively hostile and abusive." Marrero, 304 F.3d at 26.  "Something more egregious than rudeness and mockery is needed before" concluding that a plaintiff suffered from a retaliatory hostile work environment.  Id. at 27.  "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities . . . or (2) withhold from the employee an accoutrement of the employment relationship, say, by failing to follow a customary practice . . . ."  Blackie, 175 F.3d at 725.

"A change in an employee's responsibilities may be sufficient to establish an adverse employment action."  Colon-Fontanez v. Mun. of San Juan, 660 F.3d 17, 42 (1st Cir. 2011) (citing Blackie, 75 F.3d at 725).  "When a general reorganization results in some reduction in job responsibilities without an accompanying decrease in salary, or grade," however, "those changes cannot be dubbed adverse employment actions.  Gu v. Boston Police Dep't., 312 F.3d 6, 14 (1st Cir. 2002).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "demonstrate that there was a non-discriminatory reason for the adverse employment action."  Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 13-14 (1st Cir. 2013) (citing Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 14 (1st Cir. 2007)).  "If the employer demonstrates such a reason, the burden returns to the plaintiff to show that the non-discriminatory reason was merely a pretext for discrimination."  Id. at 14.

### A. *Prima Facie* **Retaliation**[6]

---

[6] Plaintiff's opposition to Defendants' motion for summary judgment provides no legal arguments substantiating that her case satisfies the *prima facie* elements and that Defendants'

Civil No. 11-2073 (GAG)

    1.    <u>Protected Conduct</u>

Wirshing complained to Santander's human resources office and filed an EEOC complaint against Santander in 2009 based on Aveleyra's alleged sexual harassment, which she claims motivated the alleged retaliation. This conduct is protected. <u>Id.</u> (citing <u>Mariani-Colon v. Dep't. of Homeland Sec. ex rel. Chertoff</u>, 511 F.3d 216, 223 (1st Cir. 2007)); <u>see also</u> <u>Benoit</u>, 331 F.3d at 175 (1st Cir. 2003).

    2.    <u>Materially Adverse Employment Action and Causal Connection</u>

The second and third elements of a *prima facie* retaliation case require the infliction of a materially adverse employment action and a connection between that action and the underlying protected conduct. An adverse employment action occurs when "the employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Sante Fe Ry. v. White</u>, 548 U.S. 53, 57 (2006).

The court deduces from Plaintiff's statement of facts, motion for summary judgment, and submissions and attachments thereto, that Plaintiff bases her Title VII claim on five instances of alleged retaliation: 1) threatening her with termination; 2) stripping away essential duties and obligations and assigning those duties to her subordinate; 3) prohibiting her from including a statement she prepared to submit with her paperwork to the SIFC; 4) delaying processing of paperwork for the disability benefits for which she applied, and; 5) failing to investigate her claim against Aveleyra. (<u>See</u> Docket No. 26-3

---

behavior was pretextual. The totality of that paramount section of the brief is about a full page, when pieced together. (<u>See</u> Docket No. 35 at 15-17) (failing to cite a single case discussing material adversity or pretextual reasoning). The court thus lacks the benefit of Plaintiff's legal perspective on these critical issues.

Civil No. 11-2073 (GAG)

at 9) (Wirshing's deposition in which she agrees with enumeration of offenses).  The court addresses

these allegations in turn.

### i.    Threatening Termination

Threatening termination, although an employment action, is not tangible.  See Burlington Indus.

v. Ellerth, 524 U.S. 724, 754 (1998); Valentin-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 95 (1st Cir.

2006); see also Blackie, 75 F.3d at 725.  The four people who allegedly threatened Wirshing with

termination are Lopetegui, Anibal Gonzalez, Aissa Rosado, and Roberto Valentin.  (Id. at 10.)

### a.    Guillermo Lopetegui

Lopetegui's alleged threats occurred before December 2010.  (Id.)  Wirshing states that no

actionable instances of retaliation occurred before December 2010.  (Docket No. 35 at 1.)  Therefore,

Plaintiff concedes that Lopetegui did not violate Plaintiff's Title VII rights.

### b.    Anibal Gonzalez

Gonzalez's alleged threat occurred in January 2011.  (Docket No. 26-3 at 11.)  Wirshing states

that Gonzalez directly supervised her in January 2011.  (Id. at 17.)  On January 7, 2011, Gonzalez

purportedly "commented to Wirshing that he saw animosity in emails between Aveleyra and her, and that

he was fully aware of the situation between Aveleyra and Wirshing." (Docket No. 35-1 ¶ 17.) Gonzalez

told Wirshing that "she had everything to lose because Aveleyra was" the commercial network director

and "Wirshing was just a simple manager, and 'the rope always splits at the thinnest point.'"  (Id.)  On

January 31, 2013, Wirshing prepared a document detailing the meeting, which she claims describes the

meeting "with precision and accuracy."  (Docket No. 26-3 at 20.)  Nothing in the document states that

Civil No. 11-2073 (GAG)

Gonzalez warned, "[T]he rope always splits at the thinnest point." (Id.)  Wirshing did not report Gonzalez's statement to the human resources department.  (Id. at 21.)

"To defeat summary judgment, a plaintiff must point to *some* evidence of retaliation by a pertinent decisionmaker." Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)  The court looks to "the total package of proof offered by the plaintiff." Benoit, 331 F.3d at 174.  "Making a clear and unambiguous threat of an adverse job consequence is an exercise of the supervisor's delegated authority" and includes "threaten[ing] to use that power if certain conditions or requirements are not satisfied." Jansen v. Packaging Corp. of Am., 123 F.3d 490, 499 (7th Cir. 1997) (en banc).  Taking Gonzalez's statements in the light most favorable to Wirshing, the threat carries minimal ambiguity.  The implication is that Wirshing's direct supervisor deemed her less important than the former supervisor who purportedly harassed her, and that Gonzalez would terminate Wirshing if she and Aveleyra continued their acrimonious correspondence.

Such a threat could deter a reasonable employee from submitting a complaint.  For instance, if a supervisor harasses a victim over email, yet her direct supervisor warns her to stay mum or possibly face termination, she could be deterred from complaining of the conduct.  "An employee who knows that, by [filing a complaint], she risks a formal . . . reprimand – including a threat of further, more serious discipline," such as termination, could forego reporting the potentially severe and pervasive behavior. See Billings v. Town of Grafton, 515 F.3d 39, 54-55 (1st Cir. 2008).  Although unfulfilled, this threat exemplifies a retaliatory action.

Conversely, Gonzalez may have merely observed the tension between Aveleyra and Wirshing in group e-mails solely concerning work-related matters, determined that Wirshing's replies offended

12

Civil No. 11-2073 (GAG)

workplace decorum, and informed her that rudeness towards a supervising manager could result in an adverse employment action. This is a question of fact. In the light most favorable to Wirshing, however, Gonzalez, her direct supervisor, tacitly implied that Wirshing could be terminated if she expressed her discontent with Aveleyra's alleged harassment.[7] Gonzalez's awareness of and reference to Wirshing's and Aveleyra's shared past during the conversation buttresses the *prima facie* case.[8]

c.   <u>Aissa Rosado</u>

Rosado, a human resources officer, worked with Wirshing to complete her application for disability benefits. When Wirshing provided Rosado with the necessary paperwork, Rosado supposedly stated, "If you continue with those allegations [of harassment and retaliation], you could be fired from [Santander]." (Docket No. 35-1 ¶ 21.) This stray remark by a fellow Santander employee, though misguided and perhaps inconsiderate, is legally insignificant. Wirshing admits Rosado was not her supervisor. (Docket No. 26-3 at 28-29.) Rosado's statement does not constitute a threat to terminate, nor does it constitute a denial of benefits, as Wirshing ultimately received disability benefits. Even if a jury could find that Wirshing was "pressured" or "snubbed" by her fellow colleague for engaging in protected

---

[7] Although Wirshing admitted in her deposition that Aveleyra ceased *sexually* harassing her after her 2009 complaint, discussed herein, retaliation claims based on a previously filed sexual harassment complaint simply require severe or pervasive behavior that need not be sexual in nature. <u>Marrero</u>, 304 F.3d at 26.

[8] Santander claims the temporal proximity between this action and Wirshing's initial complaint of twenty-two months indicates a lack of causal connection. However, the ADU claim was brought in February 2010, the EEOC claim was brought in May 2010, Aveleyra reportedly told his colleagues about the complaint in violation of company policy, Gonzalez knew about the complaint, and the issue remained problematic at work and in employees' inboxes, including Gonzalez's, as he specifically addressed the situation between Aveleyra and Wirshing with Wirshing. Furthermore, temporal proximity alone does not dictate causal connection analysis.

Civil No. 11-2073 (GAG)

conduct, one stray, inconsequential remark implying that the colleague pressured her is not severe enough to reach the threshold of material adversity.  See Marrero, 304 F.3d at 26-27.  Title VII, furthermore, does not guarantee a working environment free from stress.  Id.  In the light most favorable to Plaintiff, Rosado attempted to pressure Wirshing to cease any harassment and retaliation claims against Santander.  Alone, Rosado's words do not rise to material adversity.

d.     Roberto Valentin

Valentin served on Santander's board of directors during the relevant time period.  Wirshing's father, Herman, contacted Valentin to discuss Wirshing's hardships at Santander.  Valentin allegedly told Herman that "if she continued with the case, it would be very difficult for her to find work in the banking community, because [Santander] had enough connections and resources . . . ."  (Docket No. 25-1 ¶ 25.) Valentin denies both this statement and implying that Wirshing could be terminated for her complaint, countering that he told Herman to encourage Wirshing to remain with Santander because of the declining economy.  (See generally Docket No. 26-5.)

Valentin's supervisory status as a member of the board of directors and Herman's version[9] of the conversation, however, are both factual matters.  See Noviello v. Boston, 398 F.3d 76, 95 (1s t Cir. 1995) (finding supervisory status is "factual in nature"); see also Vance v. Ball State Univ., 570 U.S. ____, No. 11-556, slip op. at 5 n.1 (2013) (adopting Noviello's holding).  Whether Valentin was capable of taking tangible, adverse employment actions against Wirshing remains an outstanding question, as does the

---

[9] Statements made by supervisors are admissible as non-hearsay statements of the defendant's agents made within the scope of their employment.  See FED. R. EVID. 801(d)(2)(D).

**Civil No. 11-2073 (GAG)**

validity of Herman's recitation of their conversation.  The alleged threat, furthermore, directly resulted from the complaint, satisfying the causal connection element and establishing a *prima facie* case.

In sum, the allegations against Gonzalez and Valentin establish *prima facie* cases.[10]  Those against Rosado and Lopetegui do not.

### ii.    Stripping Away Essential Duties

Wirshing next alleges that Santander gradually stripped away her essential responsibilities from 2009 to 2011.  She alleges that her March 4, 2011 reassignment to work on only one client, Banca Preferente, is the only instance of diminishment that occurred after December 2010.  This reassignment, however, did not adversely harm Wirshing to the material extent necessary to offend Title VII.  In contrast, Wirshing admits that the Banca Preferente client was extremely important to Santander.  During her deposition, Wirshing replied "Yes" when asked whether "Banca Preferente was a very important project" that was "important to the bank" and "involved a lot of potential and a lot of money."  (Docket No. 35-5 at 3-4.)  She emphasized, furthermore, "I have full, full, full knowledge of [] Banca Preferente, I had control of Banca Preferente."  (Id. at 12.)  Wirshing replied in the affirmative when asked whether she was the person under whose responsibility the program was originally developed and launched.  (Id. at 14.)  She claims, however, that "it was stripped away from me from time to time, on an ongoing basis." (Id.)  Yet Serrats, her supervisor on March 4, 2011, reassigned her to work only on Banca Preferente.

The strategy to grow Banca Preferente apparently foundered in Wirshing's absence in early 2011, and Santander sought to revitalize it.  It assigned Wirshing to the account, one which she admits could

---

[10]  These allegations are directly linked to Wirshing's complaint against and feud with Aveleyra.

**Civil No. 11-2073 (GAG)**

generate substantial revenue for Santander, with which she was intimately familiar, and which was vital to Santander.

Wirshing disagrees. She claims that requiring her to focus her attention only on Banca Preferente was a retaliatory diminishment of her supervisory responsibilities. But Title VII does not protect a plaintiff from business judgments. In <u>Colón-Fontánez</u>, Colon failed to offer evidence "showing the alleged 'elimination of her supervisory position rose to the level of material harm.'" 660 F.3d 17, 42 (1st Cir. 2011). Wirshing's claim falters for the same reason as Colon's. She draws no corollary between the alleged reduction and material adversity. She neglects to direct the court to any policy, practice, or custom indicating that focusing only on one client is hierarchically subordinate to handling multiple clients, nor could time reveal whether the order, in fact, reduced her role – she took leave on March 4, 2011, and never returned.

<u>Colon</u> also addresses the reassignment of responsibilities to Wirshing's assistant. "Colón received" an assistant "on account of her unpredictable yet recurring absences," just as Wirshing was periodically absent, "not because of any promotion in employee status, raise in salary, or change in job title." <u>Id.</u> The assistant "was assigned to Colón to ensure there would be no disruption of duties and to assure that Colón's work would be managed in her absence." <u>Id.</u> Furthermore, just as in <u>Colon</u>, "upon the alleged elimination of supervisory duties," Wirshing "suffered no demotion, salary reduction, position reclassification, or loss of rank or prominence in her department." <u>Id.</u>

Colón also argued, just as Wirshing argues, that she lost her co-workers' respect and that the reassignment exacerbated her health condition, but this failed because she neglected to proffer facts showing how her assistant's re-assignment significantly affected her alleged prior authority. <u>Id.</u> The

16

Civil No. 11-2073 (GAG)

court agrees with the First Circuit's rationale in <u>Colon</u>--this allegation does not establish a *prima facie* case.[11]

### iii.    Failure to Include Wirshing's Memorial

Wirshing's third argument is that Santander retaliated against her when Rosado refused to include Wirshing's memorial of the alleged retaliation and harassment in her disability benefits application. Wirshing documented the allegations and requested the memorial's inclusion when they met to complete the requisite paperwork in mid-March 2011. Rosado denied her request. Nonetheless, Wirshing received her benefits several months later.

No materially adverse employment action occurred. Wirshing received her benefits. This benign omission prejudiced no one. Refusing to include Wirshing's recitation neither severely nor pervasively impacted her. Wirshing alleges neither delay nor diminishment of her benefits arising from Rosado's denial. Thus, no materially adverse action occurred and no *prima facie* case is established.[12]

### iv.    Delaying Benefits

Wirshing next claims that Santander delayed in processing her short- and long-term disability benefits. The application requires personal information provided by the applicant and the applicant's physician and a review by Santander's human resources and payroll departments. After the review, the

---

[11]   Skipping ahead in the burden-shifting framework, "[M]ere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext." <u>Acevedo-Parrilla v. Novartis Ex-Lax, Inc.</u>, 696 F.3d 128, 140 (1st Cir. 2012).

[12]   Wirshing raises a separate, distinct argument that Santander's human resources department delayed in processing her benefits application, which the court addresses in subsection (iv).

**Civil No. 11-2073 (GAG)**

application is sent to the appropriate insurance company.  According to Santander, it took 19 days to review and send Wirshing's short-term disability application to the insurer, and 35 days to send the long-term disability application.  Wirshing claims, simply, that this length of time constitutes an unreasonable delay that demonstrates retaliatory animus.

The underlying facts of <u>Carmona-Rivera v. Puerto Rico</u> parallel this case and the First Circuit's conclusion instructs the court on delays in disability benefits.

> While a delay in providing the accommodations needed to meet a disability may cause a significant injury or harm to a disabled person, the record in this case discloses no such harm. Inconvenience, yes, but no actual harm. Additionally, as noted *ante*, Carmona has failed to provide any evidence of a retaliatory intent associated with the delay in implementing her requests, or any evidence which shows that the delay was anything beyond that inherent in the workings of an educational bureaucracy. There is no evidence in this record from which a reasonable jury could conclude that the delays resulted from either intentional discrimination or retaliatory behavior.

464 F.3d 14, 20 (1st Cir. 2006).  Wirshing alleges nothing to distinguish her claim from the shortcoming in <u>Carmona-Rivera</u>.  She alleges no material adversity resulting from a delay between the date by which she thinks Santander should have filed her claim with the insurance company, and when it actually filed it.  Lastly, Wirshing neither discusses nor demonstrates a causal connection.  She also fails to link Rosado to this delay. Therefore, no *prima facie* case exists.

### v.    Failure to Investigate Aveleyra

Lastly, Wirshing states that Santander's purported failure to properly investigate her claims against Aveleyra exemplifies retaliation.  (Docket No. 26-3 at 9.)  Santander found that Aveleyra actively engaged in jokes of a sexual nature, violated the performance feedback policy, and violated the policy

**Civil No. 11-2073 (GAG)**

on the confidentiality of sexual harassment complaints by disclosing Wirshing's complaint against him. Wirshing admits that Santander conducted an investigation of Aveleyra, and that, while he ceased sexually harassing her after the investigation, she was dissatisfied with the findings. (Id. at 48-49.) Even if true and damning, these allegations bear no consequence because Wirshing failed to timely appeal.

In February and May 2010, respectively, Wirshing filed a complaint against Santander with the ADU and the EEOC discussing her allegations against Aveleyra – the same allegations that Santander investigated. Both bodies found no probable cause for discrimination and retaliation. (See Docket No. 26-2 at 50-51.) Wirshing neglected to challenge the allegedly discriminatory conduct in federal court within 90 days of notice of the EEOC's denial. Thus, Wirshing's claim is time-barred. (Id. at 51) (EEOC Dismissal and Notice of Rights finding, stating, "[L]awsuit must be filed WITHIN 90 DAYS of your receipt of this notice . . . ." (emphasis in original)).

Therefore, the only alleged instances of retaliation that satisfy the *prima facie* elements are Gonzalez's and Valentin's purported, unfulfilled threats.

**B.      Legitimate, Non-Discriminatory Rationale and Evidence of Pretext**

The burden thus shifts to Santander to "demonstrate that there was a non-discriminatory reason for the adverse employment action." Sanchez-Rodriguez, 673 F.3d at 13-14. "If the employer demonstrates such a reason, the burden returns to the plaintiff to show that the non-discriminatory reason was merely a pretext for discrimination." Id. at 14.

      1.      Gonzalez's Threat

Civil No. 11-2073 (GAG)

The claim against Gonzalez survives the burden-shifting framework because Santander admits that, for the purposes of summary judgment, the conversation with Wirshing occurred and offers no legitimate, non-discriminatory reason for the conversation. (Docket No. 47-1 at 44.)  Thus, pretext need not be shown.

2.  <u>Valentin's Threat</u>

Santander and Valentin deny that Valentin threatened Wirshing, that he stated that Santander has no record of Aveleyra's investigation, and that he attempted to set up a meeting with Santander's president.  (<u>Id.</u> at 48.)  Valentin claims he encouraged Wirshing, through her father, to stay at Santander "because jobs are difficult to find."  (<u>Id.</u>)  It is thus incumbent on Wirshing to demonstrate pretext.

Pretext requires the employee to "raise[] a genuine issue of fact as to whether the termination of [her] employment was motivated by . . . discrimination."  <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 431 (1st Cir. 2000).  Wirshing must offer "some minimally sufficient evidence, direct or indirect, both of pretext and of" Santander's discriminatory animus.  <u>Acevedo-Parrilla</u>, 696 F.3d at 140. The bottom line is that the genuineness of the underlying factual issue requires a credibility determination.  Herman called Valentin to seek his assistance, and the parties dispute what exactly Valentin conveyed: a threat or encouragement.  The court cannot resolve this.  Thus, triable issues exist as to Gonzalez's and Valentin's alleged threats.

**C.  The <u>Faragher-Ellerth</u> Affirmative Defense**

The First Circuit recently discussed the <u>Faragher-Ellerth</u> affirmative defense.

> The <u>Faragher-Ellerth</u> defense, which shields an employer from liability for a supervisor-created hostile work environment, can only be raised if no

20

Civil No. 11-2073 (GAG)

> tangible employment action is taken against the employee. The defense
> requires the employer to show by a preponderance of the evidence that it
> both exercised reasonable care to prevent and correct promptly any
> sexually harassing behavior and that the employee unreasonably failed to
> take advantage of any preventive or corrective opportunities provided by
> the employer or to avoid harm otherwise.

Gerald v. Univ. of P.R., 707 F.3d 7, 20 n.5 (1st Cir. 2013) (internal citations omitted) (internal quotation marks omitted). Although Gerald states that the harassing behavior must be sexual, Id., the First Circuit has imported the Faragher-Ellerth defense into anti-retaliation law from hostile work environment doctrine. Noviello, 398 F.3d at 94. "[C]ourts are left to draw the standards for employer liability from the case law involving hostile work environments in the anti-discrimination context." Id. The First Circuit proceeded to include the Faragher-Ellerth defense as an example of hostile work environment doctrine imported into anti-retaliation law. Id.

Concerning Santander's exercise of reasonable care to prevent and promptly correct any harassing behavior, several factors militate in its favor. It had an anti-retaliation and anti-harassment policy which it documented and disseminated in an employee handbook. The handbook contained a formal procedure for submitting complaints and every employee was required to review the policies and the procedure. Wirshing reviewed the policies; indeed, she engaged in the process when initially registering the harassment complaint against Aveleyra. See Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 86 (1st Cir. 2006) ("As to the first element of the defense, proof of an anti-harassment policy with a complaint procedure available to employees, while not necessarily dispositive, is relevant."); Marrero, 304 F.3d at 21 ("[T]he availability of the affirmative defense often will turn on whether the employer had established and disseminated an anti-discrimination policy, complete with a known complaint procedure.").

Civil No. 11-2073 (GAG)

Wirshing calls into question the anti-retaliation provision's effectiveness in administration and implementation. She admits that Santander's 2009 investigation caused Aveleyra to cease his allegedly sexually harassing behavior, yet she claims that two ostensible supervisors (a question of fact also exists as to their supervisory statuses) threatened her based on her complaint and acrimonious interactions with Aveleyra subsequent to the investigation.

Furthermore, Wirshing cannot be expected to seek refuge in the same process that purportedly failed to remedy harassing, albeit non-sexual, behavior and consequent retaliation from other supervisors. When Wirshing discussed the alleged harassment with Gonzalez, who was aware of the situation, she was registering a complaint. His admonishment, alleged threat, and awareness of the situation between Aveleyra and Wirshing imply that Santander's internal process did not sufficiently deter retaliatory behavior. See Agusty-Reyes v. Dep't of Educ., 601 F.3d 45, 56 (1st Cir. 2010) (jury may find complaint other than one following protocol nonetheless constitutes attempt to avail one's self of remedial regime).

Such inquiries explore reasonableness, which "is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor." Reed v. MBNA Mktg. Sys., 333 F.3d 27, 34 (1st Cir. 2003). Indeed, when "independent issues of fact exist as to whether the policy itself . . . as administered, constituted 'reasonable care to avoid harassment and to eliminate it when it might occur,'" a question of fact exists for the jury. Agusty-Reyes, 601 F.3d at 55 (quoting Faragher, 524 U.S. at 805). "Determining what constitutes a prompt and appropriate employer response to allegations of sexual harassment often requires the sort of case-specific, fact-intensive analysis best left to a jury." Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 232 (1st Cir. 2007).

22

Civil No. 11-2073 (GAG)

To the extent that the above-referenced doctrine persuades the court to apply it to the facts at bar, the First Circuit's holding in Aponte-Rivera v. DHL Solutions (USA), Inc. binds it.

> Aponte . . . testified that the harassment at work only temporarily improved after the meeting, and the situation soon turned totally hostile. Specifically, she felt pressure from the work tasks given her, and Camacho and Frias were underestimating her, being disrespectful to her, and constantly pressuring her about backlogged work. Aponte took a leave of absence in April 2006, and eventually resigned from her position at DHL in June 2006. She maintains that her decision not to file another formal complaint prior to resigning was understandable, given the fact that her prior complaints had only resulted in a worsening of her circumstances. A reasonable jury could find that Aponte availed herself of DHL's corrective opportunities without experiencing a lasting improvement in her work situation. She complained in writing on two separate occasions, and testified that she ultimately had to quit her job in order to avoid the hostile situation.

650 F.3d 803 (1st Cir. 2011) (citing White v. N.H. Dep't. of Corr., 221 F.3d 254, 261-62 (1st Cir. 2000) ("The record contains evidence from which the jury could have concluded that the [employer] did not handle the internal investigation properly or timely, and that the [employer] allowed the conduct and comments to continue.") (internal citations omitted) (internal quotation marks omitted).

Concerning whether Wirshing availed herself of Santander's procedure, failure to follow protocol in reporting alleged retaliation, despite not giving the human resources office the opportunity to remedy the situation, is not necessarily outcome-determinative.  Wirshing went to the human resources department in 2009 and complained she was harassed.  Although the ADU and EEOC both found no probable cause for her complaint, engaging in the process nonetheless entitled her to protection from retaliation.  Retaliating against her for lodging the complaint goes too far.  As previously discussed, furthermore, complaining to Gonzalez could reasonably be considered another attempt to express her

**Civil No. 11-2073 (GAG)**

grievances.  See <u>Agusty-Reyes v. Dep't of Educ.</u>, 601 F.3d at 53.  Because resolution of the first and second prongs requires factual inquiries, the court denies dismissal based upon the defense.

**IV.     CONCLUSION**

For the reasons discussed above, Defendants' motion for summary judgment at Docket No. 25 is **DENIED**.

SO ORDERED.

In San Juan, Puerto Rico this 28th day of August 2013.

S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge

24